**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 06-408-JBC**

**GARY L. SMITH,**                                                    **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                          **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment on

the plaintiff's appeal of the Commissioner's denial of his application for Disability

Insurance Benefits ("DIB") (DE 9, 10).  The court, having reviewed the record and

being otherwise sufficiently advised, will deny the plaintiff's motion and grant the

defendant's motion.

**I. Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to

deny disability benefits is limited to determining whether there is substantial

evidence to support the denial decision and whether the Secretary properly applied

relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d

679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).

"Substantial evidence" is "more than a scintilla of evidence, but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

The plaintiff was a forty-eight-year-old male at the time of the ALJ's decision.  AR 332.  He has a high school education and vocational training in welding.  AR 332-333.  He alleges disability beginning April 2, 2004, due to

2

missing digits on his right hand, anxiety, nose bleeds and back, neck and shoulder pain.  AR 335-356. The plaintiff protectively filed an application for DIB on April 7, 2004, which was denied initially and on reconsideration.  AR 13C.   After two hearings were held on January 4, 2006, and May 16, 2006, Administrative Law Judge ("ALJ") Charles J. Arnold determined that the plaintiff did not suffer from a disability as defined by the Social Security Act.  AR 13C.  At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  AR 13E.  At Step 2, the ALJ found that the plaintiff had severe impairments of amputation at the distal interphalangeal joints of digits [one] through four on his (dominant) right hand, degenerative disc disease of the thoracic and cervical spine, lumbosacral spine degenerative changes and status post left shoulder injury with degenerative joint disease.  AR 13E.  The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3.  AR 13E,13F.  At Step 4, the ALJ found the plaintiff unable to perform past relevant work.  AR 13I.  Finally, at Step 5 the ALJ found that with the plaintiff's residual functional capacity ("RFC"), jobs that the plaintiff can perform exist in a significant number in the national economy, and the ALJ therefore denied the plaintiff's claim for DIB.  AR 13I,13J.  The plaintiff appealed to the Appeals Council, his appeal was denied, and he commenced this action.

**III. Legal Analysis**

3

The plaintiff's main argument is that the ALJ's findings were not supported by substantial evidence in the record.  Although not clearly articulated, the plaintiff's claim seems to be challenging the weight given to Dr. Mel Abordo's opinion, the ALJ's credibility finding of the plaintiff, and the ALJ's use of the vocational expert.  The court will look at each of those arguments in turn.

**A.  Treating Physician's Opinion**

Ordinarily, the opinion of a treating physician is entitled to "substantial deference," but the ALJ is not necessarily bound by that opinion.  *Jones v. Comm'r of Social Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion.  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  Provided that the ALJ "sets forth a reasoned basis for [the] rejection," *Jones*, 336 F.3d at 477, the ALJ may reject the treating physician's opinion if it is inconsistent with other evidence in the record.  *Warner v. Comm'r of Social Sec.,*

4

375 F.3d 387, 391 (6th Cir. 2004).

The plaintiff argues that the ALJ did not properly consider Dr. Abordo's assessment, claiming that if the limitations within the assessment were considered, no full-time work would be available.  Although the ALJ's failure to specifically give good reasons for the weight given to the treating source's opinion runs afoul of Social Security Ruling 96-2p,[1] an examination of the record reveals that the ALJ did consider Dr. Abordo's medical assessment.  While not explicitly articulating an adequate basis for rejecting portions of the doctor's assessment, the ALJ specifically noted in his findings that Dr. Abordo stated that "the claimant has the ability to frequently perform fine manipulation using his right hand."  AR 13F.   The ALJ rejected this limitation by finding the plaintiff could not "do fine finger work with the right hand," which is consistent with medical evidence that the plaintiff lost fingers on his right hand as a child.  AR 13F, 71.  "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527.  Because Dr. Abordo's assessment contained such an inconsistent limitation, the court cannot find that the ALJ erred in declining to adopt certain portions of Dr. Abordo's assessment.

Other portions of the ALJ's RFC finding were also more restrictive than Dr.

---

[1] SSR 96-2p requires that the notice of the disability decision contain specific reasons for the weight given to the treating source's medical opinion.

Abordo's findings.[2]  Additionally, the ALJ's RFC is more restrictive than two other

RFC assessments within the record by Dr. Rawlings and Dr. Ross.  Each doctor

found that the plaintiff had few exertional limitations, but the ALJ found that the

plaintiff had the RFC for sedentary work;[3] thus, in finding the plaintiff less capable

than these two doctors found him, the ALJ implicitly gave weight to Dr. Abordo's

restrictions.  For these reasons, the court finds to the extent that the ALJ erred in

failing to state his reasons for not completely deferring to Dr. Abordo's findings,

such an error was harmless, especially in light of the fact that the ALJ's findings

specifically refer to an inconsistent portion of the doctor's assessment.  The court

_____

[2]For instance, Dr. Abordo found that the plaintiff could frequently perform fine manipulation with the right hand, could occasionally lift his left arm over shoulder level, and could lift 20 pounds on a frequent basis and 50 pounds on an occasional basis.  AR 262.  In contrast, the ALJ found that the plaintiff lacked the RFC to perform fine finger work with his right hand, could not work above shoulder level using his left hand, and could lift ten pounds on only an occasional basis and lesser weights frequently.  AR 13G.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(b).  Both doctors opined that the plaintiff was capable of lifting 25 pounds frequently and standing/walking 6 hours per day. AR 215, 242.  Not only did the ALJ find that the plaintiff could lift far less than that, he also found that the plaintiff could walk/stand up to only three hours in an eight-hour workday.  AR 13G.  Additionally, Dr. Abordo never opined that the plaintiff could not perform sedentary work.  He stated only that the plaintiff could not work at the job he was trained to perform (AR 262); this statement most likely relates to the plaintiff's previous heavy maintenance job which he held until 2004. AR 333.  This is consistent with the ALJ's finding that the plaintiff was unable to perform his past relevant work.

6

finds substantial evidence in the record to support the ALJ's decision to reject the treating source's opinion.

**B. The ALJ's Credibility Assessment of the Plaintiff**

The Commissioner is required to consider all of a claimant's symptoms, including pain, in determining whether he is disabled.  20 C.F.R § 404.1529(a). Before these symptoms will lead to a finding of disability, however, medical signs must exist which show that the claimant has an impairment which could reasonably be expected to produce the symptoms alleged.  *Id.*  When such medical signs are present, the Commissioner must then evaluate how the intensity and persistence of the symptoms affect the claimant's ability to work.  20 C.F.R. § 404.1529(c). In performing this inquiry, the ALJ must consider the objective medical evidence, evidence of the claimant's daily activities, the frequency and intensity of the claimant's pain, any precipitating or aggravating factors, any medications taken to alleviate the pain, and any other measures taken to remedy the claimant's pain.  20 C.F.R. § 404.1529(c)(3).  Although an ALJ's credibility findings are to be accorded significant deference, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the plaintiff's statements concerning the intensity, duration and limiting effects of the symptoms

7

were not entirely credible.  AR 13H.  The plaintiff argues that this finding is not

supported by the evidence.  In support of his allegation of pain, the plaintiff points

to the medical evidence of MRI reports which establish that he has disc protrusion

at C5-C6 as well as degenerative disc space changes at multiple levels of the

cervical and lumbar spine.  The ALJ did consider this evidence, as his findings

specifically note the MRIs showing "a small protrusion at C5-C6 not deforming the

cord," and mild degeneration degenerative disc space changes and disc space

narrowing.  AR 13F.  The ALJ also noted that although the plaintiff stated the pain

was almost unbearable at times, the severity of pain was not supported by the

medical evidence.  AR 13H.  For instance, while the plaintiff stated at the hearing

that he could sit for only ten to fifteen minutes at one time (AR 338), the plaintiff's

treating physician, Dr. Abordo, opined that the plaintiff could sit for sixty minutes

at one time.  AR 262.  Dr. Abordo also stated that the plaintiff suffers from only

*moderate* pain.  AR 262.  The ALJ noted that the plaintiff stated that the pain in his

left upper extremity arises from a motor vehicle accident in 1995, yet that did not

"prevent substantial gainful activity earnings through 2003 with earnings closely

approaching substantial gainful activity in 2004," (AR 13H) thereby indicating the

pain had not always affected his past ability to work, especially in light of the fact

that the plaintiff held two full-time jobs from 1990 to 2000.  Further, the ALJ

considered the plaintiff's statement to Dr. Lyons that "90% of his shoulder pain

has decreased" and "he is now able to do things that he has not been able to do for

months." AR 250.  The plaintiff contends that although he was reporting a

decrease in pain as of December 2005, the records from Dr. Abordo establish that

he had been referred to a pain clinic for his back and leg pain.  However, as

previously mentioned, this same doctor found the plaintiff's pain to be only

moderate.  AR 262.

Despite these findings, the ALJ gave the plaintiff "a generous benefit of the

doubt . . . in assessing an [RFC] for only sedentary work when he was engaged in

very heavy work until his alleged onset date, 04/02/04.  His injuries, dating back to

his childhood, have not prevented heavy-very heavy work on a sustained basis from

1973 until 2004."  AR 13I.  The ALJ's assessment of the plaintiff's credibility and

pain was based on substantial evidence, including the ALJ's assessment of the

plaintiff's testimony and the medical record; therefore, the court will not disturb it.

**C.  The Testimony of the Vocational Expert**

Once the ALJ determined that the plaintiff did not have the RFC to perform

his past relevant work, "the burden shifted to the Secretary to show that [the]

plaintiff possesses the capacity to perform other substantial gainful activity that

exists in the national economy."  *Varley v. Sec'y of Health and Human Services,*

820 F.2d 777, 779 (6th Cir. 1987).  There must be substantial evidence that the

plaintiff has the vocational qualifications to perform specific jobs to meet this

burden.  *Id.*  For the testimony of a vocational expert ("VE") to "prov[e] the

existence of a substantial number of jobs that [a] plaintiff can perform, other than

9

his past work, the testimony must be given in response to a hypothetical question

that accurately describes the plaintiff" in all relevant and significant respects.

*Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

At the hearing, the ALJ posed a hypothetical question to the VE based on

the ALJ's RFC assessment.  More specifically, the ALJ asked the VE to consider

> the age, education and work experience then of [the plaintiff], and that
> he hypothetically has a residual functional capacity for work at the
> sedentary only exertional level, further restricted as follows.  One, he
> could not do any fine finger work with his right hand, and secondly,
> cannot do any shoulder level working with his left hand.

AR 323-324.  Taking those limitations into account, the VE testified that jobs

existed as an information clerk or a security monitor.[4]  AR 324.

The plaintiff argues that if his physical limitations were accurately considered

by the VE, then no jobs would be available.  The issue is whether the hypothetical

question accurately described the plaintiff.  The plaintiff points only to his own

testimony of disability[5] and to the exertional limitations found by Dr. Abordo[6] in

support of his argument that certain limitations were not presented by the ALJ in

formulating the RFC and hypothetical question for the VE.  As already noted by the

---

[4] Specifically, as an information clerk, there are 2,700 in the state and 410,000 nationally.  As a security monitor, there are 1,900 jobs in the state and 450,000 nationally.

[5] Assuming that a person testified that due to pain he took medication which made him drowsy, the VE opined that it would be difficult to perform a job as an information clerk or security monitor.  AR 326.

[6] The VE testified that the plaintiff would be unable to work if he experienced the limitations of sitting and standing noted in Dr. Abordo's assessment.  AR 325.

10

court, the ALJ properly considered Dr. Abordo's assessment and substantial evidence supported the ALJ's decision to reject portions of the doctor's limitations. Other than Dr. Abordo's records, the plaintiff has not cited to any specific portion of the record that indicates why the ALJ's hypothetical question did not adequately describe his limitations.  Moreover, as addressed by this court, the ALJ found the record did not support the plaintiff's testimony regarding his symptoms.  "If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha v. Sec'y of Health and Human Services,* 927 F.2d 228, 231 (6th Cir. 1990).  Therefore, the court finds that the ALJ's hypothetical question, the vocational expert's response, and the ALJ's ultimate opinion that the plaintiff is not disabled as defined in the Social Security Act were supported by substantial evidence in the record.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 9) is **DENIED**.

Signed on  March 5, 2008



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

11